**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tina M. Grisham,               ) | CIV 06-1169-PHX-MHB |
|                                ) | |
|         Plaintiff,             ) | **ORDER** |
|                                ) | |
| vs.                            ) | |
|                                ) | |
| Jo Anne B. Barnhart, Commissioner ) | |
| of Social Security,            ) | |
|                                ) | |
|         Defendant.             ) | |
|                                ) | |

      Pending before the Court is Plaintiff Tina Grisham's appeal from the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits and Supplemental Security Income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

      On August 14, 2003, Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI of the Social Security Act, alleging disability since August 15, 1999. (Transcript of Administrative Record ("Tr.") at 77-79; 315-316.) Her application was denied both initially and on reconsideration. (Tr. at 51-53; 62-65.) Following a timely request from Plaintiff (Tr. at 56-57), a hearing was held before Administrative Law Judge ("ALJ") Ronald C. Dickinson on April 20, 2005. (Tr. at 310-341.) After taking the matter under advisement, the ALJ denied Plaintiff's claims on July 21, 2005, finding Plaintiff not disabled. (Tr. at 30-39.)

1    Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council.
2    (Tr. at 28-29.) On February 24, 2006, the Appeals Council denied Plaintiff's request for
3    review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr.
4    at 9-11.) Plaintiff then commenced the instant action for judicial review pursuant to 42
5    U.S.C. §§ 405(g), 1383(c)(3). On August 14, 2006, Plaintiff moved for summary judgment.
6    Defendant filed a Cross-Motion for Summary Judgment and Response to Plaintiff's Motion
7    for Summary Judgment on October 17, 2006.

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

1  12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for
2  benefits by following a five-step sequential evaluation:

3     (1) determine whether the applicant is engaged in "substantial gainful activity";

4
5     (2) determine whether the applicant has a medically severe impairment or combination of impairments;

6     (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to
7     preclude the applicant from engaging in substantial gainful activity;

8     (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past
9     relevant work;

10    (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national
11    economy in view of his age, education, and work experience.

12 See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. § 404.1520). At the
13 fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can
14 perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir.
15 1993).

16      The ALJ found that Plaintiff had not engaged in "substantial gainful activity" since
17 her alleged onset date. (Tr. at 38.) The ALJ determined that Plaintiff had the following
18 impairments: hernia, multiple stomach surgeries, and the inability to bend and lift heavy
19 objects. (Tr. at 38.) The ALJ considered these impairments severe, but not severe enough
20 to meet or medically equal, either singly or in combination, any of the impairments listed in
21 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 38.)
22 The ALJ concluded that, notwithstanding these impairments, Plaintiff retained the residual
23 functional capacity to perform light and sedentary work with restrictions.[1] (Tr. at 38.) The
24 ALJ found that Plaintiff is unable to use her lower extremities for pushing or pulling, and is
25 precluded from crawling, crouching, climbing, squatting, or kneeling. (Tr. at 37.)

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. See 20 C.F.R. § 404.1545(a).

- 3 -

1    Based on the foregoing, the ALJ concluded that Plaintiff had the residual functional
2 capacity to perform past relevant work as a telemarketer and cashier.  (Tr. at 38.)
3 Accordingly, because Plaintiff's ability to perform past relevant work was substantially
4 intact, the ALJ determined that Plaintiff was not disabled.  (Tr. at 38.)

## IV.  DISCUSSION

6    In her motion for summary judgment, Plaintiff contends that the ALJ (1) erred in
7 determining her residual functional capacity without any basis in the record; (2) failed to
8 properly assess her credibility; (3) erred by assessing a residual functional capacity
9 inconsistent with her impairments; and (4) erred by failing to consider the effect of her
10 obesity on her ability to sustain work.

11    **A.    Plaintiff's Residual Functional Capacity**

12    Plaintiff argues that the ALJ erred in determining her residual functional capacity
13 without any basis in the record.  Specifically, Plaintiff states the ALJ improperly relied on
14 non-examining state agency physicians who did not testify at the hearing.  Thus, Plaintiff
15 claims that the ALJ's residual functional capacity assessment is not supported by substantial
16 evidence.

17    The ALJ, after conducting a detailed review of the record, concluded that Plaintiff is
18 capable of performing light and sedentary work with restrictions.  (Tr. at 38.)  Specifically,
19 the ALJ found that Plaintiff is unable to use her lower extremities for pushing or pulling, and
20 is precluded from crawling, crouching, climbing, squatting, or kneeling.  (Tr. at 37.)

21    In determining Plaintiff's residual functional capacity, the ALJ addressed Plaintiff's
22 subjective allegations.  (Tr. at 36.)  Plaintiff testified that she lives in a house that she rents
23 with several friends and that she does not drive because she does not have a car.  (Tr. at 36.)
24 Plaintiff stated that her friends help with shopping and errands, and reported that she was a
25 self-employed caregiver/cashier.  (Tr. at 36.)  However, the ALJ found Plaintiff's testimony
26 somewhat inconsistent with her reports of activities of daily living, which indicated that
27 Plaintiff had no trouble with personal care, cooking, housework, and shopping.  (Tr. at 36.)
28 Plaintiff stated that she does her own laundry and needs no help with her personal needs.

1  (Tr. at 36.) She stated that she has pain when she bends over or stands for long periods, but
2  that she takes Tylenol for the pain. (Tr. at 36.) The ALJ concluded that Plaintiff admitted
3  certain abilities that provided support for part of the residual functional capacity assessment.
4  (Tr. at 36.)

5  The ALJ also considered the medical opinion of Plaintiff's treating physician, Richard
6  J. Whitman Jr., M.D., and the opinions of the State agency's reviewing physicians in
7  determining Plaintiff's residual functional capacity. (Tr. at 35-37.)

8  Dr. Whitman reported Plaintiff's first ventral hernia repair on February 5, 2002, after
9  which she suffered complications and slow healing. (Tr. at 35.) On May 17, 2002, Plaintiff
10 was diagnosed with a second ventral hernia, and was hospitalized from October 14-19, 2002,
11 due to an infection following her third ventral hernia repair. (Tr. at 35.) Plaintiff underwent
12 a fourth ventral hernia repair on October 7, 2003. (Tr. at 35.) Four months later, on February
13 19, 2004, Dr. Whitman opined that Plaintiff could occasionally lift and/or carry up to fifty
14 pounds, and frequently lift and/or carry up to twenty-five pounds. (Tr. at 35.) Dr. Whitman
15 stated that Plaintiff was doing well since her last surgery and that she would be able to stand
16 and/or walk for about six hours in an eight-hour workday. (Tr. at 35.) Plaintiff could sit for
17 six hours in an eight-hour workday with the ability to alternate standing and sitting. (Tr. at
18 35.) Plaintiff could also occasionally climb, stoop, kneel, crouch, and crawl. (Tr. at 35.)

19 In his decision, the ALJ also addressed the December 2003 and February 2004
20 opinions of the State agency's reviewing physicians. (Tr. at 37.) The ALJ stated,

21 [t]he undersigned generally agrees with the residual functional capacity
   conclusions reached by the physicians employed by the State Disability
22 Determination Services (exhibits 4F and 6F). They also supported a finding
   of 'not disabled.' Although those physicians were non-examining, and
23 therefore their opinions do not as a general matter deserve as much weight as
   those of examining or treating physicians, those opinions do deserve some
24 weight, particularly in a case like this in which there exist [sic] a number of
   other reasons to reach similar conclusions (as explained throughout this
25 decision).

26 (Tr. at 37.) The opinions cited to by the ALJ (as exhibits 4F and 6F) stated that Plaintiff
27 could perform essentially sedentary and light work. (Tr. at 232-239, 242-249.) Additionally,
28 notes on the State agency's Case Development Sheet indicated that the State agency

- 5 -

1  physicians' conclusions were based in part on the February 2004 Medical Source Statement
2  of Dr. Whitman – Plaintiff's treating physician. (Tr. at 82.)

3  Plaintiff asserts that the ALJ improperly relied on assessments completed by non-
4  examining state agency physicians who did not testify at the hearing. As such, Plaintiff
5  claims that the ALJ relied on insubstantial evidence. The Court disagrees.

6  The opinions of non-treating or non-examining physicians may serve as substantial
7  evidence when the opinions are consistent with independent clinical findings or other
8  evidence in the record – as is the case before the Court. See Thomas v. Barnhart, 278 F.3d
9  947, 957 (9th Cir. 2002). Furthermore, as previously noted, the ALJ is responsible for
10 determining credibility and resolving ambiguities. See Andrews, 53 F.3d at 1039;
11 Magallanes, 881 F.2d at 750. "If the evidence can reasonably support either affirming or
12 reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that
13 of the [Commissioner]." Reddick, 157 F.3d at 720-21.

14 Accordingly, contrary to Plaintiff's assertion that the ALJ erred in determining her
15 residual functional capacity without any basis in the record, the Court finds that the ALJ
16 provided: (1) a substantial and detailed discussion of the objective medical and other
17 evidence; (2) a resolution of possible inconsistencies in the evidence; and (3) a logical
18 explanation of the effects of symptoms on the individual's ability to work. The Court,
19 therefore, finds that the ALJ provided an adequate assessment of Plaintiff's limitations and
20 a narrative discussion of how the medical evidence and other evidence of record supported
21 his assessment of Plaintiff's residual functional capacity. The ALJ's decision is supported
22 by substantial evidence.

23  **B.  Plaintiff's Credibility**

24 Plaintiff alleges that the ALJ failed to properly assess her credibility. Specifically,
25 Plaintiff claims the ALJ failed to provide clear and convincing reasons to discount her
26 complaints of disabling pain. Citing Moisa v. Barnhart, 367 F.3d 882 (9th Cir. 2004) (ALJ
27 committed clear error in rejecting pain testimony solely for lack of corroborating objective
28 medical evidence; the ALJ failed to provide permissible reasons supporting the rejection of

1 testimony, such as, conflicts between claimant's testimony and his own conduct), Plaintiff
2 requests that the Court remand this case for a determination of benefits based on her
3 testimony, because the limitations set forth in her testimony are inconsistent with the ability
4 to sustain work activity.

5       As the Court has noted, the ALJ is responsible for determining credibility.  See
6 Magallanes, 881 F.2d at 750.  When deciding whether to accept the subjective testimony of
7 a claimant, the ALJ must perform a two-part analysis.  In the first part, the claimant must (1)
8 produce objective medical evidence of one or more impairments; and (2) show that the
9 impairment or combination of impairments could reasonably be expected to produce some
10 degree of symptom.  See Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996).  The claimant is not
11 required to produce objective medical evidence of the symptom itself, the severity of the
12 symptom, or the causal relationship between the medically determinable impairment and the
13 symptom.  See id. at 1282.  Rather, the claimant is only required to show that the impairment
14 could reasonably have caused some degree of the symptom.  See id.

15       In the second stage of the analysis, the ALJ must assess the credibility of the
16 claimant's testimony regarding the severity of the symptoms.  If there is no affirmative
17 evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes
18 specific findings, stating clear and convincing reasons for the rejection.  See id. at 1284.  In
19 evaluating the credibility of a claimant's testimony, evidence of claimant's daily activities,
20 type and dosage of pain medication, treatment received, and the ALJ's own recorded
21 observations of the claimant during the hearing are all relevant as part of the ALJ's overall
22 assessment of the claimant.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

23       In finding that Plaintiff's allegations were "not fully credible," the ALJ noted several
24 inconsistencies between Plaintiff's testimony, her reports of activities of daily living, and the
25 greater objective record.  (Tr. at 35-37.)  Specifically, regarding Plaintiff's daily living, she
26 testified that she lives in a house that she rents with friends and four children.  (Tr. at 319.)
27 She stated that does not drive, but mainly spends the day lying around the house.  (Tr. at 320,
28

1  334.) Plaintiff stated that her friends help with shopping and running errands. (Tr. at 320.)
2  The ALJ found this testimony "somewhat inconsistent with [Plaintiff's] reports of Activities
3  of Daily living which indicate that [Plaintiff] had no trouble with personal care, cooking, and
4  some housework and shopping. ... She stated she does her own laundry and needs no help
5  with her personal needs." (Tr. at 36.) Additionally, the ALJ found that although "[Plaintiff]
6  stated that she has pain when she bends over or stands for long periods[,] [Plaintiff] stated
7  that she took Tylenol for the pain (exhibit 6F)." (Tr. at 36.)

8        The ALJ also contrasted Plaintiff's complaints of disabling pain with the greater
9  objective record. (Tr. at 35-37.) Although Plaintiff alleged a complete inability to work, Dr.
10 Whitman – Plaintiff's treating physician – opined that Plaintiff was able to occasionally lift
11 and/or carry up to fifty pounds, and frequently lift and/or carry up to twenty-five pounds, sit,
12 stand, and/or walk for about six hours each in an eight-hour workday with the ability to
13 alternate standing and sitting, occasionally climb, stoop, kneel, crouch, and crawl. (Tr. at
14 250-251.) The December 2003 and February 2004 opinions of the State agency's reviewing
15 physicians also opined that Plaintiff could perform essentially sedentary and light work. (Tr.
16 at 232-239, 242-249.)

17       In summary, the ALJ provided a sufficient basis to find Plaintiff's allegations "not
18 fully credible," including: inconsistencies surrounding Plaintiff's testimony and subjective
19 complaints of disabling pain, Plaintiff's reported daily activities, and the greater objective
20 record. As the ALJ referred to in his decision, each of these factors are relevant to the overall
21 analysis, and it is the cumulative effect of all the factors that led to his conclusion. The Court
22 finds that the ALJ has supported his decision regarding Plaintiff's allegations with specific,
23 clear and convincing reasons and, therefore, finds no error.

24       **C.**    **The ALJ's Residual Functional Capacity Assessment**

25       Plaintiff contends that the ALJ erred by assessing a residual functional capacity that
26 is inconsistent with her determined impairments. Specifically, Plaintiff alleges that the ALJ
27 found her impairments to include the inability to bend and lift objects. Plaintiff asserts an
28

- 8 -

inconsistency exists in that the ALJ then assessed an ability to perform light work, which by definition requires the ability to lift 20 pounds.

Contrary to Plaintiff's assertion, the ALJ found that Plaintiff's severe impairments included "hernia, multiple stomach surgeries, [and the] inability to bend and lift heavy objects ... ." (Tr. at 38, Finding 3.) After conducting a detailed review of the record, including Plaintiff's subjective allegations and the medical opinion of Plaintiff's treating physician and the opinions of the State agency's reviewing physicians, the ALJ concluded that Plaintiff had "the residual functional capacity for light and sedentary work with restrictions." (Tr. at 38, Finding 6.) As noted previously, the Court finds that these findings are not inconsistent and are supported by substantial evidence.

### D.     Plaintiff's Impairments

Lastly, Plaintiff argues that the ALJ erred by failing to consider the effect of her obesity on her ability to sustain work. Plaintiff relies on Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003) to support her argument. However, the Court finds that Celaya is distinguishable from the case at bar.

In Celaya, the Ninth Circuit reasoned that the ALJ should have considered obesity as a disabling factor in the sequential analysis, even though not explicitly raised by claimant, for three reasons:

> First, it was raised implicitly in Celaya's report of symptoms. Second, it was clear from the record that Celaya's obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illness. Third, in light of Celaya's pro se status, the ALJ's observation of Celaya and the information on the record should have alerted him to the need to develop the record in respect to her obesity.

Id. at 1182.

Here, there was no evidence before the ALJ stating that Plaintiff's obesity limited her functioning as to put the ALJ on notice that he should further explore and consider the issue in his analysis. Plaintiff, who was represented by counsel, failed to present any testimony or other evidence at her hearing, which indicated that her obesity impaired her ability to work. Moreover, the objective medical record is silent as to whether and how Plaintiff's

obesity might have limited her or exacerbated her condition. Plaintiff's treating physician and the State agency's reviewing physicians, whom the ALJ relied upon as the basis for his findings regarding Plaintiff's impairments and limitations, undoubtedly considered all of Plaintiff's ailments either separately or in combination and determined that Plaintiff could perform essentially sedentary and light work.

Plaintiff has not set forth, and there is no evidence in the record, of any functional limitations as a result of Plaintiff's obesity that the ALJ failed to consider. The ALJ properly found that Plaintiff retained the residual functional capacity to perform light and sedentary work with restrictions, and thus retained the ability to perform her past relevant work as a cashier and telemarketer.

## V.  CONCLUSION

The Court finds that the ALJ properly concluded that Plaintiff is not disabled. Based upon the foregoing discussion,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #10) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Doc. #18) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

DATED this 27th day of July, 2007.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge